Filed 2/25/14  Blanchard v. Blanchard CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| HOWARD BLANCHARD et al., <br><br>      Plaintiffs and Respondents, <br><br> v. <br><br> STEPHEN A. BLANCHARD, as Trustee, etc., et al., <br><br>      Defendants and Appellants. | A137777 <br><br> (Alameda County <br> Super. Ct. No. RP10519970) |

In 2006, Julia B. Smith, then a 90-year-old widow, established the "Julia B. Smith Revocable Living Trust Dated November 29, 2006" (Smith Trust).  On July 20, 2009, Smith amended the Smith Trust to change the designated successor trustee from her nephew Howard Blanchard to his brother and her nephew, Stephen Blanchard.  She also changed the beneficiaries from three of her nieces and three charities to her nephew Stephen as the sole beneficiary.[1]  Smith died in March 2010.  Howard, later joined by three of the previously designated charities (Charities), challenged via petition the July 20, 2009 amendment and a second amendment made on November 23, 2009.  Petitioners[2] alleged Smith lacked testamentary capacity to make the changes, and that Stephen and his wife Carole had both unduly influenced her and committed elder abuse.

_____

[1]  Because three individuals involved in this litigation are named Blanchard we will use their first names in this opinion.  No disrespect is intended.

[2]  We sometimes refer to Howard and the Charities as "petitioners."

1

After a bench trial in the spring of 2012 lasting several days, the probate court concluded that petitioners had not shown by a preponderance of the evidence that Smith lacked capacity when the trust amendments were made, or was subjected to undue influence or elder abuse by Stephen or Carole. That decision is not the subject of this appeal.

Rather, Stephen and Carole appeal from the probate court's decision striking Stephen's memorandum of costs in the amount of $60,313.38, which Stephen claimed as a prevailing party under Code of Civil Procedure section 1032, including $46,463.03 in expert witness fees based upon Code of Civil Procedure section 998. The court determined that the dispute, including the elder abuse claim, had been brought and tried as a probate matter, not as a civil matter. Consequently Probate Code section 1002, rather than Code of Civil Procedure sections 998 and 1032, governed the award of costs to the prevailing parties. Exercising the discretion provided by Probate Code section 1002, the court determined it would not be in the interests of justice to award any of the claimed costs to Stephen and Carole. We affirm.

## BACKGROUND AND PROCEDURAL HISTORY

The background facts pertinent to this appeal are set out by the probate court, Judge Marshall I. Whitley presiding, in its decision and judgment:

"Julia B. Smith . . . a [widow], died, without issue, on March 17, 2010, after having been diagnosed with a type of cancer of the blood called lymphoma. This case involves decedent's intervivos trust . . . . Her nephew Howard Blanchard is a Petitioner, and her nephew Stephen Blanchard is a Respondent. There are two petitions at issue - one filed by several charitable organizations and the other by Howard. These Petitions are: the First Amended Contest Re Amendment No. 1 and Amendment No. 2 to the Trust and For Damages for Financial Elder Abuse filed by the Marcus Foster Education Fund, St. Augustine's Episcopal Church, and Linfield College ('the Charities') [filed on September 13, 2011]; and the First Amended Petition by Howard Blanchard [filed September 19, 2011] (collectively, 'the Petitions' and 'the Petitioners'). Carole and

2

Stephen Blanchard who are husband and wife (collectively, 'the Respondents') have filed responses to the Petitions.

"The Petitions seek court orders that the amendment to the Trust on July 20, 2009, ('Amendment No. 1') and on November 23, 2009 ('Amendment No. 2') (collectively, 'the amendments') be held void on the grounds of undue influence, lack of testamentary capacity, and financial elder abuse; for recovery of property pursuant to Probate Code § 850; and damages, attorney fees, and costs pursuant to the Financial Elder Abuse statutes, and for breach of trust. Finally, Howard requests that Stephen be removed as trustee, that he be ordered to provide an accounting, that he be required to restore all Trust assets, and that he, Howard, be appointed trustee of the Trust. Stephen and Carole have opposed these claims and request that they be denied in all respects."

Howard filed his original petition in June 2010, three months after Smith died. Throughout the remainder of 2010 and until November 2011, numerous hearings and some settlement conferences were scheduled in Department 201 of the Alameda County Superior Court, which is and was its probate department. In November 2011, the matter was called in Department 1 of the court as a "master calendar matter - Non-jury trial - Probate," and was assigned to Department 18 for a bench trial before Judge Whitley. After preliminary matters were resolved, Judge Whitley heard several days of evidence and, in May 2012, filed his proposed statement of decision. The decision and judgment, filed on July 27, 2012, determined all three principal issues presented on the merits in favor of Stephen and Carole.

Stephen (but not Carole) subsequently filed a memorandum of costs[3] seeking $60,313.38, of which $46,463.03 was for expert witness fee expenses. On the same day, Stephen provided the court with a memorandum of points and authorities to which he attached offers to compromise he (but not Carole) served on Howard and the Charities,

---

[3] Stephen and Carole incorrectly assert on appeal that they filed a joint memorandum of costs. The record shows that a memorandum and amended memorandum were filed by Stephen. Carole, who was separately represented in the probate court, did not submit either of these documents and, so far as the record shows, did not join in them.

and which petitioners had not accepted.  The Charities and Howard then filed separate motions to tax costs.  Judge Whitley heard argument on these motions[4] and took the matter under submission.  In his decision, filed on December 3, 2012, he deemed the Charities' and Howard's motions to tax costs as motions to strike Stephen's memorandum of costs and granted them.  Judge Whitley wrote:

"As set forth in California Code of Civil Procedure . . . section 1032[, subdivision] (b) a prevailing party is entitled to costs as a matter of right.  However, this rule does not apply to probate litigation.  Instead, Probate Code sections 1000 and 1002 have been interpreted to make the matter of costs discretionary with the court in probate matters ' . . . as justice may require.' [Citations.]  In addition, while [Code of Civil Procedure] section 998 applies to withhold or augment costs, by its terms its application is limited to costs allowed by [Code of Civil Procedure] section 1032.  Therefore, section 998 cannot support [Stephen]'s claim for expert witness fees in this probate litigation.

"What remains is whether justice requires that some or all of the costs requested by [Stephen] should be awarded?

"During the time of the trust amendments that were the focus of the trial [Smith] was experiencing significant physical and mental deterioration which soon led to her death.  By then [Stephen] and his wife had taken the lead in handling many of Smith's needs and affairs, including the creation and execution of the controversial trust amendments.  Also, during this time the communication between [Stephen] and [Howard] became strained and then became nonexistent.  Given these and the other circumstances there were sufficient 'red flags' warranting inquiry after Smith's death and even justifying bringing this action by the Petitioners.  This litigation then progressed in a relatively reasonable fashion, including the trial continuances which were all for good cause.  Settlement conferences, offers to compromise and mediation were all undertaken in attempts to resolve the matter without litigation; to no avail.

---

[4] No transcript of this hearing has been provided to us.

4

"The Judgment of the court after trial was that the evidence when viewed as a whole was insufficient to persuade the court that Smith lacked capacity to execute the amendments, that she was unduly influenced by [Stephen], or that any of her property was wrongfully taken by [Stephen]. In sum, the Petitioners' evidence, while substantial, was not sufficient to satisfy the preponderance of evidence standard when viewing the evidence as a whole. Though [Stephen] prevailed, the victory was by a close margin. Therefore, the court does not believe that justice would be served by awarding costs to [Stephen]. Accordingly, the parties should bear their own costs and attorney fees. Motions to Tax/Strike are GRANTED."

Stephen filed a motion for reconsideration, raising, for the first time, that the elder abuse claims constituted a civil cause of action. Judge Whitley denied the motion, both because it was an improper motion for reconsideration under Code of Civil Procedure section 1008 and on the merits: "The motion for reconsideration does not satisfy the requirements of [Code of Civil Procedure section] 1008 in that it is not based upon new or different facts, or circumstances of law that were not before the court at the time of the court's 12/3/12 ruling. . . . Finally, under the circumstances presented, even if the court were to reconsider its ruling of 12/3/12, that ruling would be reaffirmed. The Welfare and Institution Code sections pled and litigated in this matter were entirely within the context of a probate proceeding and are inextricably intertwined with the other probate claims that were the subjects of this case."

Stephen and Carole timely filed this notice of appeal. The Charities filed a respondents' brief, but Howard did not.

**DISCUSSION**

Probate Code section 1002 makes clear that "the superior court . . . may, in its discretion, order costs to be paid by any party to the proceedings, or out of the assets of the estate, as justice may require." (See *Hollaway v. Edwards* (1998) 68 Cal.App.4th 94, 99.) Stephen and Carole do not argue the probate court abused this discretion. Instead, they argue it should not have ruled pursuant to Probate Code section 1002 at all, but, rather, was required to award them costs pursuant to Code of Civil Procedure sections

5

998 and 1032 because the case involved a civil matter. Also, they argue, even if the probate court could have ruled pursuant to Probate Code section 1002, it did not adequately express the reasons why the "interests of justice" did not warrant an award of costs to them. We conclude neither argument has merit.[5]

## I. *Probate Code Section 1002 Applies Here*

Stephen and Carole first ask us to analyze "the interplay between Probate Code section 1002 and Code of Civil Procedure section 1032" and determine that Code of Civil Procedure section 998 applies to probate matters, as well as to civil matters. The Charities suggest that we need not and should not address the interplay of the two costs provisions in the abstract, but instead should determine that this case was prepared and tried as a probate matter, not a civil matter, and that Judge Whitley's treatment of it as such was entirely appropriate. We agree with the Charities.

The record before us makes clear that this case was prepared and tried as a probate matter. We have already recounted the procedural history in the probate court below. Furthermore, petitioners raised issues appropriate for the probate court to consider. The Charities' operative petition raised three issues: undue influence, lack of capacity, and elder abuse. The remedies sought were declaratory relief and compensatory and punitive damages for the trust, and attorneys' fees for the Charities. Howard's operative petition sought a determination of the validity of the amendments, double damages pursuant to Probate Code section 859, removal of the trustee and appointment of a successor trustee,

---

[5] The Charities ask us to dismiss Carole's appeal because she did not file or join in Stephen's memorandum of costs in the probate court. They also ask that we disregard Stephen's argument that the elder abuse claim was a civil action for which costs should be awarded because Stephen did not raise that argument until his motion for reconsideration. We decline to reach these issues in light of our affirmance of the probate court's order granting petitioners' motions to strike. We note, however, that Howard apparently did not join in the Charities' motion to tax or in their brief in this court. Since Judge Whitley treated the Charities' motion to tax as a motion to strike, as he did Howard's, and that aspect of his ruling is not challenged, his ruling and our opinion benefit Howard despite his lack of participation in this appeal.

6

an order determining to whom property should pass, compensatory and punitive damages, and attorneys' fees for elder abuse.

On appeal, Stephen and Carole do not dispute that the first time mention was made that the elder abuse claim should be treated as a civil action was in their motion for reconsideration. In other words, at no time did they ask that the elder abuse claim be tried separately as a civil action, ask for a jury, or otherwise suggest in the court below that this matter was in any way not a probate case. Instead, they argue that "section 15657.3[, subdivision] (a) of the Welfare and Institutions Code specifically notes that a financial elder abuse cause of action is a civil action yet it allows the probate department of the superior court to award relief. Given that the action is a civil action and not a probate cause of action, simply because the parties choose to litigate this matter with the trust contest, should not then allow Probate Code section 1002 to trump Code of Civil Procedure section 1032[, subdivision] (b)." However, their premise is wrong. Neither provision applies to the present circumstances.

Welfare and Institutions Code section 15657.3, subdivision (a) provides: "The department of the superior court having jurisdiction over probate conservatorships shall also have concurrent jurisdiction over civil actions and proceedings involving a claim for relief arising out of the . . . abuse of an elderly or dependent adult, *if a conservator has been appointed for the plaintiff prior to the initiation of the action for abuse*." (Italics added.) No conservator was appointed for Smith in this case, and so this section, on its face, has no application here.

Welfare and Institutions Code section 15657.3, subdivision (b) provides in pertinent part: "The department of the superior court having jurisdiction over probate conservatorships shall not grant relief under this article if the court determines that the matter should be determined in a civil action, but shall instead transfer the matter to the general civil calendar of the superior court." In other words, had Stephen and Carole wished to have the elder abuse claims treated as a civil action, they could have filed a motion in the probate department or, once the case was assigned for trial to Department 18 as a long cause probate matter, chosen to have the case, or that aspect of the case,

7

treated as a civil action.  But they did not.  As Judge Whitley said at the hearing on the motion to reconsider:  "There was never a request for jury as far as I know, a jury trial. There was never a request to place this matter on a civil track.  We manage civil cases and civil causes of action differently from the way we manage probate causes of action. This was never put on the track to be managed as a civil matter."  Hence, whether or not Code of Civil Procedure section 1032 should ever be applied to cases which contain probate claims and seek damages and attorneys' fees under Welfare and Institutions Code section 15657.3, this is not such a case.

Further, Code of Civil Procedure section 1032, subdivision (b), which establishes the general rule that prevailing parties in civil actions should recover their reasonable costs, reads as follows:  "*Except as otherwise expressly provided by statute*, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."  (Italics added.)  Probate Code section 1000 makes clear that, "*[e]xcept to the extent that this code provides applicable rules*, the rules of practice applicable to civil actions, including discovery proceedings . . . , apply to, and constitute the rules of practice in, proceedings under this code."  (Italics added.)  In other words, Code of Civil Procedure section 1032, subdivision (b), by its own terms, only applies absent a *different* statutory provision made expressly applicable to probate matters.  Probate Code section 1002 is just such a different provision.  Instead of providing for an award of costs as a matter of right to a prevailing party, it provides that "either the superior court or the court on appeal may, *in its discretion*, order costs to be paid by any party to the proceedings, or out of the assets of the estate, as justice may require."  (Prob. Code, § 1002, italics added.)  Hence, in a case such as this one, which was pleaded, prepared and tried as a probate matter, it was entirely appropriate for Judge Whitley to exercise his sound discretion under Probate Code section 1002 in deciding whether or not Stephen and Carole, as the prevailing parties, should be awarded some or all of the costs they claimed.  And that is what he did.

8

**II.** *The Probate Court Adequately Explained Its Decision Not To Award Costs*

Stephen and Carole also argue that Judge Whitley did not adequately explain why he decided not to award them costs. Stephen and Carole cite no authority which would require the probate court to explain its reasoning on an award of costs.

But even if an explanation were required, we find no fault here. Judge Whitley characterized this as a close case in which substantial evidence supported the Charities' and Howard's claims. Stephen directly benefitted by becoming the sole beneficiary of the trust amendments he "had taken the lead" in creating and had executed at a time when his elderly aunt was in poor health. In the end, the court decided that petitioners had not sustained their burden of proof. It is undisputed, however, that the amendments to the trust agreements benefited Stephen tremendously, and that he and Carole had used money which had belonged to Smith for their own benefit. Moreover, Howard, as successor trustee under the original trust, had no financial interest under the original trust and did not stand to gain financially by having the amendments set aside. Given the "red flags" Judge Whitley identified in his decision on the merits and in his order granting the motions to strike the cost memorandum, it was entirely reasonable for Howard, as the former trustee, and the Charities, which were eliminated as beneficiaries by the amendments, to challenge Stephen and Carole's conduct.

Finally, although Judge Whitley did not believe that Code of Civil Procedure section 998 applies to probate matters, he plainly exercised his discretion and explained his reasons both with respect to the denial of expert witness fees and other costs. The parties agree and this court concludes that, as Stephen and Carole state in their supplemental brief, pursuant to Probate Code section 1002, "expert witness fees are recoverable as costs in probate matters. If the matter is purely a probate issue, the probate court always has discretion to award costs." (See *Estate of Costa* (1961) 191 Cal.App.2d 515, 520-521.) The probate court's decision not to do so in this case was

9

entirely understandable and appears well within the court's discretion.[6] Given our holding, we need not address the separate question of whether expert witness fees might have also been available, in the trial court's discretion, under Code of Civil Procedure section 998.

## DISPOSITION

The trial court's order denying costs to the prevailing parties is affirmed. Petitioners are awarded costs of appeal.

_____
Brick, J.*

We concur:

_____
Kline, P.J.

_____
Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

[6] Again, Stephen and Carole do not actually argue the court abused its discretionary authority under Probate Code section 1002. To do so would be futile in light of the limited record they have provided to this court, which does not include transcripts of the trial or the hearing regarding the motions to strike. (See e.g., *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1264 [stating, "appellants' failure to designate the reporter's transcript of the trial as part of the record and appeal leaves this court with no evidence upon which to base a finding that the trial court abused its discretion in determining that respondent's section 998 offer was reasonable"].)

10